IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIAM SANDERS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-3998-N |
| | § | |
| ZWICKER & ASSOCIATES, P.C., | § | |
| | § | |
| Defendant. | § | |

**ORDER**

This Order addresses Defendant Zwicker & Associates, P.C.'s ("Zwicker") motion to dismiss [Doc. 20]. For the following reasons, the Court grants the motion.[1]

**I. THE DEBT COLLECTION DISPUTE**

Zwicker is a law firm that collects delinquent credit card accounts on behalf of American Express. Sanders alleges that Zwicker violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") by including misleading statements in a debt collection letter Sanders received in August 2013. Sanders objects to a paragraph in the collection letter:

> American Express requires that we inform you that the law limits how long a debt can be reported to a consumer reporting agency. Because of the age of your debt, American Express cannot report it to a consumer reporting agency. Payment or non-payment of this debt will not affect your credit score.

---

[1]This Order also addresses Plaintiff William Sanders's motion for class certification [6]. Because the Court grants the motion to dismiss, the Court denies Sanders's motion without prejudice.

ORDER – PAGE 1

>However, if American Express does obtain judgment, it may appear on your Credit Report.

Am. Compl., Ex. A [5-1].  Sanders argues that these statements are false and misleading because federal law limits reporting collection accounts to seven years, *see* 15 U.S.C. § 1681c(a)(4), (c)(1), and Texas has a four year statute of limitations for actions on unpaid credit card debt, *see* TEX. CIV. PRAC. & REM. CODE § 16.004.

Zwicker now moves to dismiss Sanders's claim.  Zwicker claims that the Joint Consent Order, Joint Order for Restitution, and Joint Order to Pay Civil Money Penalty (the "Consent Order") between American Express, the Consumer Financial Protection Bureau (the "CFPB"), and the Federal Deposit Insurance Corporation (the "FDIC") requires Zwicker to include the challenged disclosures.  *See infra* Section II.A (explaining context and scope of Consent Order).[2]  Zwicker argues that this Court lacks jurisdiction to review the decisions of the CFPB and FDIC or should defer to the agencies' decision under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).  Alternatively, Zwicker argues that Sanders fails to state a plausible claim for relief.

---

[2]Zwicker requests that the Court take judicial notice of the Consent Order [21].  A court may take judicial notice of records published by government agencies and available on the agencies' official websites.  *See Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005).  The Court therefore grants Zwicker's motion and takes judicial notice of the Consent Order.

## II. THE COURT HAS JURISDICTION

The Court addresses the Defendant's contention that the Court lacks subject matter jurisdiction under Rule 12(b)(1) before it considers other arguments for dismissal. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). The plaintiff bears the burden of proof to show subject matter jurisdiction exists in the Rule 12(b)(1) context. *See Ramming*, 281 F.3d at 161. "[F]ederal courts . . . grant[] jurisdiction in most cases and dismiss[] for lack of subject matter jurisdiction only under narrow circumstances." *Nowak*, 81 F.3d at 1188.

Though the Court has original jurisdiction over claims brought under the FDCPA, *see* 15 U.S.C. § 1693k(d), both the Federal Deposit Insurance Act (the "FDIA") and the Consumer Financial Protection Act ("CFPA") divest this Court of jurisdiction to review orders issued by the CFPB or the FDIC. *See* 12 U.S.C. § 1818(i)(1) ("[E]xcept as otherwise provided . . . no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order."); 12 U.S.C. § 5563(d)(2) (same).

Zwicker contends that the Consent Order mandates the disclosures and contemplates the FDIC and CFPB's ongoing involvement in supervising compliance with the Consent Order. Zwicker Mot. 5. According to Zwicker, a ruling on Sanders's FDCPA claim would

be, in effect, a ruling on the validity of the Consent Order and would risk conflicting opinions. *Id.* But Sanders's claim is not based solely on disclosures required by the Consent Order. To the contrary, Sanders objects to the statement " if American Express does obtain judgment, it may appear on your Credit Report" (the "Supplemental Disclosure"), which is not required by the Consent Order. *See* Sanders Resp. 2 [27]. The Court first considers whether it has jurisdiction over Sanders's claim under sections 1818(i)(1) and 5563(d)(2).

### A. *Scope of the Consent Order*

On October 1, 2012, American Express, the CFPB, and the FDIC signed the Consent Order. *See* Consent Order [21-1]. The Consent Order issued after the CFPB and FDIC determined that American Express violated 15 U.S.C. § 45(a)(1) of the Federal Trade Commission Act and 12 U.S.C. §§ 5531, 5536, which prohibits certain deceptive debt collection practices. *Id.* at 1.[3] Specifically, the CFPB and the FDIC were concerned with debt settlement letters sent by American Express and its agents "that stated that after settlement, the consumers' remaining debt would be 'waived' or 'forgiven' " and that "settlement of Unreported Debt would be reflected on the consumers' credit report and that payment could improve the consumers' credit score." *Id.* at 3. These statements were misleading because they misrepresented the extent to which payment of unreported debt would actually affect the consumer's credit report. *Id.*

---

[3]The Consent Order also addressed other alleged violations not at issue in this case. American Express consented to the issuance of the Consent Order "without admitting or denying any findings of fact, violations of laws or regulations or any unsafe or unsound banking practices." *Id.* at 5.

As part of the settlement, American Express agreed to "provide disclosures concerning the expiration of [its] litigation rights when collecting debt that is barred by applicable state statutes of limitations" and "to remove all deceptive statements." *Id.* at 6–7. The Consent Order further required that American Express "disclose clearly and prominently" the following items:

> (a) All material conditions, benefits and restrictions concerning any offer of settlement; and,
>
> (b) When collecting on Unreported Debt, the following language:
>
>> The law limits how long a debt can be reported to a consumer reporting agency. Because of the age of your debt, we cannot report it to a consumer reporting agency. Payment or non-payment of this debt will not affect your credit score.

*Id.* at 6–7 (the "Required Disclosures"). The Consent Order instructed American Express "not to make any representation or statement, or take any other action that interferes with, detracts from, contradicts, or otherwise obscures" the Required Disclosures. *Id.* at 7.

In addition to requiring that American Express include the Required Disclosures in its debt collection notices, the Consent Order also instituted certain compliance mechanisms. First, American Express's actions as required in the Consent Order "shall be satisfactory to the Regional Director of the FDIC's San Francisco Regional Office ("FDIC Regional Director") and the Regional Director, West Region, of the CFPB ("CFPB Regional Director") as determined at subsequent examinations and/or visitations." *Id.* at 6. Second, American Express agreed to implement a compliance program to ensure compliance with consumer protection laws. *Id.* at 13. Among other things, American Express would retain

independent third-party consultants and an independent certified accounting firm to supervise American Express's compliance with the Consent Order. *Id.* at 14, 20, 29–30. The FDIC and CFPB Regional Directors would have approval over these consultants and the accounting firm. *Id.* The FDIC and CFPB Regional Directors would also review and approve the restitution plan mandated by the Consent Order. *Id.* at 22. Finally, either the FDIC or CFPB would be able to enforce the Consent Order should American Express violate it. *Id.* at 35.

### *B. The Court Has Jurisdiction*

The Court concludes that sections 1818(i)(1) and 5563(d)(2) do not divest it of jurisdiction over the issues in this case. First, it's not clear from the statute that it should apply to bar the suit of a nonparty to a consent agreement, as Sanders is here. Some courts have found that the primary purpose of the jurisdiction-divesting statutes is to prevent Courts from interfering with ongoing agency action against a party subject to that agency's regulatory authority, not to deprive nonparties of a right to relief. In *Rex v. Chase Home Finance LLC*, the Central District of California found that section 1818 did not necessarily divest a court of jurisdiction in a suit brought by a nonparty:

> Section 1818(i)(1) – the one at issue here – is but one of three parts of Section 1818 that "establish[] a tripartite regime of judicial review" for cease-and-desist orders issued by certain federal banking agencies pursuant to the authority granted to them in Section 1818(b). [*MCorp Fin., Inc.*, 502 U.S. at 38] (discussing 12 U.S.C. §§ 1818(c)(2), (h)(2), and (i)(1)). The other two subsections are Sections 1818(c)(2) and (h)(2). Section 1818(c)(2) provides that the recipient of a cease-and-desist order "may seek an injunction in district court restraining enforcement of the order." *Id.* Section 1818(h)(2) "authorizes court of appeals review of final [federal banking agency] orders." *Id.* In short, the Section 1818 "tripartite regime" focus on the judicial mechanisms by which either the federal banking agency or recipient of a cease-and-desist order may obtain review of such an order.

> "It is significant that there is no provision in [Section 1818] for a non-party to a consent order to challenge findings made pursuant to the Order." [*In re JPMorgan Chase Mortg. Modification Litig.*, 880 F. Supp. 2d 220, 232 (D. Mass. 2012)]. "It follows that the jurisdictional bar is not meant to displace a non-party's right to present its claims to a federal court, or the jurisdiction of the court to hear those claims." *Id.*
>
> Understood in this context, it is clear that the Jurisdiction-Divesting Clause was "not intend[ed] to . . . prohibit non-parties from exercising their separate remedies at law." *Id.* at 231. Rather, "the primary purpose of [Section 1818] is to prevent federal courts from usurping the [regulating agency's] power to enforce its own consent orders *against parties to the orders.*" *Id.* at 231*; see also Ridder v. Office of Thrift Supervision*, 146 F.3d 1035, 1039 (D.C. Cir. 1998) ("To prevent regulated parties from interfering with the comprehensive powers of the federal banking regulatory agencies, Congress severely limited the jurisdiction of courts to review ongoing administrative proceedings brought by banking agencies.").

905 F. Supp. 2d 1111, 1126 (C.D. Cal. 2012) (emphasis added). The cases Zwicker cites in support of its argument that sections 1818(i)(1) and 5563(d)(2) divest this Court of jurisdiction involve suits by parties to the consent orders who seek to enjoin administrative proceedings or avoid their obligations under the order. *See, e.g.*, *Bd. of Governors v. Mcorp Fin., Inc.*, 502 U.S. 32, 44 (1991) (plaintiff was a bank holding company that sought a court order enjoining the prosecution of two administrative proceedings); *Rhoades v. Casey*, 196 F.3d 592, 597 (5th Cir. 1999) (plaintiff was an individual affiliated with the institution that was the subject of the consent agreement); *Peoples Nat'l Bank v. Office of the Comptroller of the Currency*, 227 F. Supp. 2d 645, 651 (E.D. Tex. 2002) (plaintiff was the bank subject to agency action). That is not the case here.

Second, the Consent Order itself does not purport to limit nonparty rights to relief. To the contrary, the Consent Order allows consumers to pursue legal rights related to

American Express's debt collection practices.  In Article III of the Consent Order, it states that American Express must provide restitution for consumers who received certain debt forgiveness solicitations.  *See* Consent Order 22.  But American Express's restitution payments "shall not limit consumers' rights in any way" nor does the provision of restitution "create any new collection, consumer reporting or litigation rights on behalf of" American Express.  *Id.* at 23.  "From this express reservation, the Court must conclude that third-party actions were not intended to be barred by the Consent Order."  *Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1080 (N.D. Cal. 2013).

Finally, Zwicker fails to show that a ruling on the Supplemental Disclosure would necessarily "affect" the Consent Order.  On its face, the complaint does not seek remedies that would be inconsistent with the Consent Order.  Zwicker argues that the Consent Order prohibits any statement that "interferes with, detracts from, contradicts, or otherwise obscures" the Required Disclosures and thus a decision on the Supplemental Disclosure would require the Court to evaluate the Required Disclosures.  Zwicker Reply at 3 [28] (citing Consent Order 7).  But, as the Consent Order does not explicitly address the statement made in the Supplemental Disclosure, the Court could rule on the permissibility of the Supplemental Disclosure without evaluating its relationship to or the validity of the Required Disclosures.[4]

---

[4]These latter two points distinguish this case from *Bakenie v. JPMorgan Chase Bank, N.A.*, 2012 WL 4125890 (C.D. Cal. 2012), a case Zwicker cites to support its position.  *Bakenie* involved a challenge to the defendants' alleged improper endorsement of various foreclosure documents.  2012 WL 4125890, at *1.  The *Bakenie* court found that it lacked jurisdiction because the consent order included specific findings related to notarial practices

For these reasons, the Court finds that sections 1818(i)(1) and 5563(d)(2) do not divest it of jurisdiction to address Sanders's claim.[5]

### III. SANDERS FAILS TO STATE A CLAIM FOR RELIEF

Having determined that it has jurisdiction, the Court next turns to Zwicker's arguments regarding dismissal. When faced with a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in

---

and prohibited the payment of money to the plaintiffs. *Id.* at *3. Unlike in *Bakenie*, the Consent Order does not directly address the substance of the Supplemental Disclosure nor does it limit consumers' relief to that provided by the restitution plan.

[5]The Court also holds that *Skidmore* deference does not apply. Zwicker argues that deference to the FDIC and CFPB's interpretations in the Consent Letter require dismissal under *Skidmore* because (1) the regulating agencies have already determined that the Required Disclosures satisfy the requirements of the FDCPA, *see* Zwicker Mot. 10, and (2) Sanders's claim "challenges whether the Required Disclosure bars the inclusion of additional, accurate information in its communications," *see* Zwicker Reply 4. But Sanders makes neither argument. Rather, Sanders argues that the Supplemental Disclosure is misleading independently of the Required Disclosures. Sanders Resp. 7 [27]. Zwicker has not cited an agency interpretation that might guide the Court on this particular issue. *Cf. Blakemore v. Pekay*, 895 F. Supp. 972, 980 (N.D. Ill. 1995) (applying FTC interpretation of venue in determining the proper venue). Thus, there is no applicable agency interpretation to which this Court may defer under *Skidmore*.

the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

The FDCPA provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Misrepresenting the legal status of a debt is conduct that violates this section. *Id.* The section further specifies that a debt collector may not use "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* § 1629e(10). The FDCPA is a strict liability statute. *Walker v. Pharia, LLC*, 2010 WL 565654, at *3 (N.D. Tex. 2010) (citing *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 495 (7th Cir. 2007)).

Sanders asserts a single claim for relief under the FDCPA. Am. Compl. ¶¶ 17–20 [5]. Sanders alleges that the Supplemental Disclosure "misrepresents that [Zwicker's] client American Express can obtain a judgment, which is not the case." *Id.* ¶ 18. Sanders explains his logic as follows:

> 10. The [debt collection] letter states that "Because of the age of your debt, American Express cannot report it to a consumer reporting agency."

> 11. Under the Fair Credit Reporting Act, 15 U.S.C. §1681c, a debt can be reported to a consumer reporting agency for 7 years, and "The 7-year period . . . shall begin, with respect to any delinquent account that is placed for collection (internally or by referral to a third party, whichever is earlier), charged to profit and loss, or subjected to any similar action, upon the expiration of the 180-day period beginning on the date of the commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action."
>
> 12. A debt that can no longer be reported because of the age of the debt is therefore more than 7 years old.
>
> 13. [The debt collection letter] also states that "if American Express does obtain judgment, it may appear on your Credit Report."
>
> 14. The statute of limitations applicable to a credit card in Texas is 4 years. [TEX. CIV. PRAC. & REM. CODE] § 16.004.  Furthermore, payments after default do not interrupt the running of limitation on the debt, *Stein v. Hamman*, 118 Tex. 16, 6 S.W.2d 352, 353 (1928); *Siegel v. McGavock Drilling Co.*, 530 S.W.2d 894 (Tex. Civ. App. – Amarillo 1975, writ ref'd n.r.e.).
>
> 15. If the debt is over 7 year old since default, American Express cannot obtain a judgment on the debt.

*Id.* ¶¶ 10–15.  In other words, because American Express represented that it could not report Sanders's debt, his debt must be more than seven years old.  As the Texas statute of limitations is four years, Sanders's debt is time-barred.  Thus, Sanders concludes, Zwicker's implication that it could obtain a judgment against him is misleading.

Sanders's allegations are insufficient to state a claim, however.  Sanders misrepresents Texas law.  Texas has two statute of limitations periods that are potentially applicable here.  As Sanders states, an action to collect on credit card debt may be brought as an action on an open or stated account, both of which are governed by a four-year limitations period pursuant to TEX. CIV. PRAC. & REM. CODE § 16.004(c).  *See Capital One Bank (USA), N.A. v. Conti*,

345 S.W.3d 490, 492 (Tex. App. – San Antonio 2011, no pet.). " '[T]he cause of action accrues on the day that the dealings in which the parties were interested together cease.' " *Id.* (citing TEX. CIV. PRAC. & REM. CODE § 16.004(c)). An action to collect on a debt may also be brought as a breach of contract action, which also has a four-year limitations period. *See Dodeka, LLC v. Campos*, 377 S.W.3d 726, 730 (Tex. App. – San Antonio 2012, no pet.) (citing TEX. CIV. PRAC. & REM. CODE § 16.004(a)(3)). An action for breach of contract on a credit card account begins to accrue on the date of the debtor's last payment. *Id.* at 730–31.

Sanders fails to allege when he made his last payment on the debt or when his account closed. As Zwicker argues, it is possible that a debt might be older than seven years for purposes of FCRA reporting but not be time-barred under Texas statutes of limitations if Sanders continued to make payments, even if inconsistently. *See Williams v. Unifund CCR Partners Assignee of Citibank*, 264 S.W.3d 231, 232–34 (Tex. App. – Houston [1st Dist.] 2008, no pet.) (finding that the statute of limitations had not tolled where debtor made his final payment on his card several years after account was closed). Thus, without allegations regarding the date of Sanders's last payment or the date the account was closed, the Court cannot conclude that Zwicker could not obtain a judgment against Sanders and thus cannot find that the Supplemental Disclosure was false or misleading. *Cf. Kimber v. Federal Fin. Corp.*, 668 F.Supp. 1480, 1489 (M.D. Ala. 1987) ("The dispositive fact [in a lawsuit over representations about the ability to collect time-barred debt] is that a debt collector could not legally prevail in such lawsuit, and for the debt collector to represent otherwise is fraudulent.").

ORDER – PAGE 12

Sanders argues that the date of his last payment is a fact question properly resolved at the summary judgment stage and not on a motion to dismiss. Sanders Resp. 9. But Sanders must at least lay a factual foundation that allows the Court to find his claims plausible on their face. *Iqbal*, 556 U.S. at 679 ("But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."). Sanders has failed to do so. Without this information, his claim is not plausible. Accordingly, the Court dismisses his claim.

## CONCLUSION

The Court grants Zwicker's motion and dismisses Sanders's claim without prejudice. The Court grants Sanders leave to file an amended complaint within twenty-one (21) days of the date of this Order.

Signed September 9, 2014.

_____
David C. Godbey
United States District Judge